COLEMAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. March 6, 1917.)

No. 2909.

POST OFFICE ☞50—OFFENSES—EVIDENCE—SUFFICIENCY.

In a prosecution under Pen. Code (Act March 4, 1909, c. 321) §§ 190, 192, 35 Stat. 1124, 1125 (Comp. St. 1913, §§ 10360, 10362), for breaking into a post office with intent to commit larceny and for stealing stamps and money therein, the property of the United States, evidence *held* sufficient to go to the jury.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89.]

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

J. W. Coleman and another were convicted under Pen. Code, §§ 190, 192, of breaking into a post office with intent to commit larceny, etc., and they bring error. Affirmed.

Geo. Du Relle, of Louisville, Ky., for plaintiffs in error.
Perry B. Miller, U. S. Atty., of Louisville, Ky.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. Plaintiffs in error and one Brayton were arrested, by virtue of an indictment under sections 192 and 190, respectively, of the Penal Code of the United States, for breaking into the post office at Smithland, Ky., with intent to commit larceny, and for stealing postage stamps and money belonging to the United States. Coleman and Harding (hereinafter called defendants) were tried; Brayton did not appear at the trial. At the conclusion of the testimony defendants asked direction of verdict in their favor, which was denied. There was a verdict of guilty, followed by judgment.

The only question presented here is whether the peremptory instruction in defendants' favor should have been given; that is to say, whether the evidence was sufficient to warrant the verdict. Upon a careful

consideration of the testimony, we think the motion to direct verdict was properly denied.

Smithland is a town of a few hundred inhabitants located near the Ohio river, about 12 miles above Paducah; it has no railroad and no electric lights; its mail is brought in from a point several miles distant. The post office door was opened by a key on the night of March 19–20, the safe blown open apparently by nitroglycerine, and the stamps and money stolen therefrom, including considerable silver change. There were found in the store, among other things, a pick and wrench which the testimony tended to show were stolen on the night of the post office robbery from a general store situated a short distance from the post office; this store also having been entered by opening the door with a key. In blowing open the safe a cup of soap had been made in the upper end of the door, and soap had also been used in filling up the space in the door openings, to facilitate explosion. The soap had been spattered upon various articles in the vicinity of the safe. There was also found a piece of cloth, apparently brought there by the burglars.

The defendants and Brayton had been in and about Paducah for several weeks before the robbery. There was evidence tending to show that they had no legitimate business there, that they were intimately associated, and that at different times and places they registered, in the case of one or more of the parties, under names not always the same, and with given places of residence not always the same; also that about three weeks before the robbery defendants and a third person came to Smithland in a gasoline motor boat owned by defendant Coleman; that they paid a short visit to the post office, with the announced purpose of getting mail, and stayed at a hotel at Smithland overnight; that the next morning they had the boat pump repaired in the rear of the store referred to, and had opportunity to see the location of the pick and wrench which were later stolen on the night of the post office robbery. There was evidence further tending to show that, on the evening of and before the robbery, a gasoline boat came up the river and landed a fraction of a mile below Smithland, and that the tracks of three persons were found the next morning leading from the place where the boat landed toward Smithland, and returning; that toward the following morning, and before daylight, a gasoline boat went down the river between Smithland and Paducah; that that morning Coleman's launch was found moored perhaps a mile below Paducah, not at a regular boat landing, and that Coleman had the boat taken away for repairs; there was evidence having a tendency to show that it was Coleman's gasoline boat referred to which made this up and down trip on the night of the robbery.

Defendants and Brayton were arrested at Paducah on the next evening after the robbery. Soon after the arrest there were found in a grip, which the testimony tended to show belonged to defendant Harding, two pistols, a flashlight, a candle, and a pair of pants like the coat then worn by Coleman. There was testimony that on each of the three arrested was found more or less silver change of the kind

taken from the post office, and that on some of the money taken from one of the defendants was found soap; that neither of the three would give any account of himself; that in Brayton's grip were found two pistols, on one of which was soap—the evidence tending to show that one of these pistols belonged to Coleman. There was also testimony that on July 2d following the robbery a grip was found buried on the river bank, from 50 to 100 yards from the point where Coleman's boat was found moored on the morning following the robbery. In this buried grip were found a large quantity of stamps, identified by package number as the stolen stamps in question; also burglars' tools, fuse, and caps, and in addition a piece of cloth resembling that found at the post office, also a bunch of keys, one of which would unlock the post office, and another would unlock the store door.

There was further testimony tending, in greater or less degree, to connect defendants with the robbery. While the testimony was entirely circumstantial, it is a commonplace that circumstantial evidence, if of such character as to produce conviction of guilt beyond a reasonable doubt, is sufficient to sustain a judgment of conviction. As already said, we think the testimony presented a case supporting the verdict rendered.

The judgment of the District Court is accordingly affirmed.

